**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Brenda J. Johnson and**
**Patricia K. Ormston,**

**Plaintiffs,**

**v.**

**U.S. Bancorp and U.S. Bancorp**
**Broad-Based Change in Control**
**Severance Pay Program,**

**Defendants.**

**Civil No. 02-799 (PAM/SRN)**

**ORDER**

---

Thomas E. Glennon, Esq., on behalf of Plaintiffs.

Stephen Paul Lucke, Esq. & Andrew Holly, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on September 10, 2002, on Plaintiffs' Motion to Compel and for Attorneys' Fees (Doc. Nos. 13-1 & 13-2) and Defendants' Motion for Protective Order (Doc. No. 9).

This Order addresses those motions.

## I. FACTUAL BACKGROUND

In the present case, Plaintiffs have brought claims for: (1) breach of employment contracts; (2) wages and commissions owed to them along with statutory penalties, pursuant to Minn. Stat. §§ 181.14 and 181.171, subd. 1; and (3) breach of the provisions of the U.S. Bancorp Severance Pay Program in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq..

DEC 0 9 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Plaintiffs are former employees of Defendant U.S. Bancorp (USB). (Complaint at ¶¶ 1 & 2.) At the time Plaintiffs separated from employment with USB, they were participants under the USB Broad-Based Change in Control Severance Pay Program (the Severance Pay Program). Id. The Severance Pay Program "at all relevant times, has been and is now a 'welfare benefit plan' under 29 U.S.C. § 1002(1) and an 'employee benefit plan' under 29 U.S.C. § 1002(3)." Id. at ¶ 4. The Severance Pay Program provided that if USB reduced an eligible employee's base and draw compensation by more than 10% within 24 months following a "Partial Change in Control," that employee would have "Good Reason" to terminate employment with USB and receive change in control benefits, including severance pay. Id. at ¶ 11.

In early 2001, a Partial Change in Control took place when Firstar Corporation acquired USB. Id. at ¶ 13. Prior to the acquisition, Plaintiffs' compensation consisted of a guaranteed base salary plus commissions. Id. at ¶ 12. After the acquisition, all PFS Loan Mortgage Officers, including Plaintiffs, were informed that their compensation would be modified to an entirely commission-based system. Id. at 14. Subsequently, in April 2001, Plaintiff Johnson according to the Complaint, and both Plaintiffs according to the Amended Answer, was informed that she would be offered another compensation plan in which she would receive a "guaranteed draw" in an amount equal to her former salary. Id. at ¶ 18; (Amended Answer at ¶ 14.)

Plaintiffs Ormston and Johnson notified USB that they were separating employment from it for Good Cause on May 31 and June 1, 2001 respectively. (Complaint at ¶ 23.) Plaintiffs allege that they were consequently entitled to change-in control severance payments, and Defendants improperly refused to provide the payments. Id. at ¶¶ 29, 30, and 50. Plaintiffs

further allege that the Severance Pay Program then failed to timely respond to their requests for review of the Severance Administration Committee's initial denial of claims, as required by the Severance Pay Program and the Severance Administration Committee. Id. at ¶ 48.

## II DISCUSSION

### A. Relevance Standard.

Federal Rule of Civil Procedure 26(b)(1) provides:

> In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . The information sought need not be admissible at the trial if the information appears reasonably calculated to lead to the discovery of admissible evidence.

The Eighth Circuit has considered the breadth of Rule 26 and the possible abuses discovery requests which can result from it.

> Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989) (and cases cited therein). While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122 (S.D. N.Y. 1986), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer v. Mack Trucks, Inc., 981 F.2d 377 (8th Cir. 1992).

**B. Protective Orders.**

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
>
> (5) that discovery be conducted with no one present except persons designated by the court;
>
> (6) that a deposition, after being sealed, be opened only by order of the court;
>
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and
>
> (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Fed. R. Civ. P. 26(c).

**C. Review of ERISA Determinations.**

The Eighth Circuit has explained a court's role in reviewing ERISA determinations as

follows:

> The Supreme Court enunciated the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court held a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) should be reviewed under a de novo standard unless the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. When the plan grants such authority an abuse of discretion standard applies. *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir.1998).

Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1196-97 (8th Cir. 2002). The court explained, however, that a conflict of interest may trigger a less deferential standard of review. Id. at 1197. It described the following sliding scale analysis that results from a conflict of interest:

> The less deferential standard of review applies when the plaintiff presents "material, probative evidence demonstrating (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty." *Woo*, 144 F.3d at 1160. Only when a claimant meets the "two-part gateway requirement" does the court apply a "sliding scale" approach to determine just how much deference should be given the plan administrator's decision. *Schatz*, 220 F.3d at 947.

Id.

Citing an earlier decision in McGarrah v. Hartfofd Life Ins. Co., 234 F.3d 1026, 1031 (8th Cir. 2000), the Court explained that "when an entity funds a plan and is also the plan administrator there is a rebuttable presumption of a palpable conflict of interest." Id. at 1198.

**D. Preemption Under ERISA.**

> ERISA defines an employee benefit plan as "an employee welfare benefit plan or an employee pension benefit plan," 29 U.S.C. §

> 1002(3) (1988), and an "employee welfare benefit plan" as "any plan, fund, or program ... established or maintained ... for the purpose of providing for its participants [specified] benefit[s]," id. § 1002(1). Such benefits include severance benefits. Wallace v. Firestone Tire & Rubber Co., 882 F.2d 1327, 1329 (8th Cir.1989).

Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir. 1994).

"In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52-57, 107 S.Ct. 1549, 1555-58, 95 L.Ed.2d 39 (1987), the Supreme Court held that the civil enforcement provisions of § 1132(a) are the exclusive remedy for beneficiaries seeking to enforce their rights under an ERISA plan." Donatelli v. Home Ins. Co., 992 F.2d 763, 764-65 (8th Cir. 1993). Accordingly, the Eighth Circuit has held that ERISA preempts state law breach of contract claims seeking benefits under employee benefit plans. See Stock v. Share, 18 F.3d 1419, 1422 (8th Cir. 1994).

Nevertheless, not all plans qualify as ERISA plans.

> An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan. *Wells v. General Motors Corp.*, 881 F.2d 166, 176 (5th Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990). Instead, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), and its progeny have delineated the standard to be applied to determine whether a benefits plan falls within ERISA's ambit: The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.

Kulinski, 21 F.3d at 256-57. "Several courts have applied this standard to severance and similar benefits, and their conclusions necessarily differ based on the specific facts of each case." Gilmore v. Siligan Plastics Corp., 917 F. Supp. 685, 687 (E.D. Mo. 1996).

E. **The Parties' Positions.**[1]

Plaintiffs state that Defendants have refused to produce any information, documents, or statements relevant to the claims and defenses other than the ERISA claim in Count Three of the Complaint. With respect to the ERISA claim, Plaintiffs state that Defendants have refused to provide any responsive information other than that which is reflected in the administrative record created by USB's Severance Administration Committee. Plaintiffs argue that Defendants have satisfied none of the standards set forth in the Federal Rules of Civil Procedure to justify the discovery limitations they seek. Plaintiffs state that "in view of Defendants' stated intention to later move to dismiss some or all of Plaintiffs' claims in this action, it is imperative that Plaintiffs have access to all of the requested information, documents and statements in order to enable Plaintiffs to fairly address and oppose Defendants' intended dispositive motions."

**1. Count One.**

Plaintiffs argue that Defendants have not demonstrated that the interests of justice require that a protective order be issued. Plaintiffs explain that Defendants are refusing to provide discovery relevant to the state law breach of contract claim based on the argument that the claim is preempted by ERISA. Plaintiffs state, however, that Defendants have not yet brought a motion to dismiss. Consequently, they argue they "are entitled to unfettered discovery" on this claim because Defendants offer only a conclusory analysis and ignore the question of whether the Severance Pay Program is actually an ERISA employee benefit plan. ERISA and its

---

[1]The motion to compel and motion for a protective order concern the same factual and legal issues. Accordingly, the parties make the same arguments in each motion. The only matter unique to Plaintiffs' motion to compel is their request for reasonable expenses, including attorney's fees, incurred in bringing that motion. As a result, the motions are not discussed separately in the body of this Order.

corresponding case law, according to Plaintiffs, do not clearly define a "plan." Therefore, Plaintiffs conclude that they should be entitled to proceed with discovery on the state law breach of contract claim as long as this Court does not issue a ruling that ERISA preempts that claim.

Defendants respond that all of the discovery Plaintiffs seek in connection with the contract claim is irrelevant, because the claim is preempted by ERISA. Defendants argue that the breach of contract claim relies upon the exact same factual allegations and sections of the Severance Pay Program as the ERISA claim. Defendants explain that both Counts One and Three of the Complaint: (1) are based on representations in the Severance Pay Program; (2) claim that the compensation plan offered to Plaintiffs gave them "Good Reason" to resign; and (3) seek damages in the amount of the severance benefits due under the program. Defendants observe that Plaintiffs even refer to the plan as a benefit plan in the Complaint. Hence, the plan certainly qualifies under ERISA.

Defendants state, "the Supreme Court has made it clear that ERISA's civil enforcement section, section 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)), provides the exclusive remedy for beneficiaries seeking to enforce their rights under an ERISA plan." They cite Eighth Circuit and Supreme Court cases involving complaints that contained multiple counts including those for breach of contract. In these cases, the state law claims were held to have been preempted by ERISA. Accordingly, Defendants conclude that Count One is also preempted by ERISA and can not stand as a separate claim. They conclude, "[t]o allow Plaintiffs any discovery on this claim would seriously undermine ERISA's goal of establishing a fair and cost-effective administrative remedy. Plaintiffs should not, therefore, be allowed to receive discovery on their preempted state law breach of contract claim."

**2. Count Three.**

Citing Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641-42 (8th Cir. 1997), Plaintiffs concede that in an abuse of discretion case, evidence that was not presented to the administrator may not be presented to the district court. They argue, however, that "that rule cannot be logically applied to limit discovery of an administrator's conflict of interest given the burdens placed upon plaintiffs under established case law." Plaintiffs cite various federal cases in support of their argument, and they include the following quotation from Arnold v. F.A. Richard & Assoc., Inc., 2000 WL 1693659 *5 (E.D. La. Nov. 9, 2000): "it would be unreasonable to require [Plaintiffs] to attempt to prove bad faith, inconsistent plan interpretation, and conflict of interest without allowing [Plaintiffs] the opportunity to develop evidence to support those claims, [Defendants] must respond to all discovery requests that are not otherwise privileged."

In support of their conflict of interest argument, Plaintiffs state that: (1) the Severance Pay Program was self-funded; (2) Defendants behaved suspiciously by initially taking away all of Plaintiffs' base salary, and then returning at least to Johnson her entire previous salary through a "guaranteed draw"; (3) Defendants initially recovered Plaintiffs' allegedly "guaranteed nonrecoverable draw" following their separation from employment, and only later determined this to be an error requiring that they return the compensation; and (4) the Severance Administration Committee failed to timely notify Plaintiffs in writing whether their claims were upheld or denied, and did not furnish Plaintiffs with a written notice "describing special circumstances requiring a specified amount of additional time to reach a decision on Plaintiffs' requests for review, as promised by the Committee and required by the Program."

Plaintiffs also explain that there is no rule requiring them to specifically plead a conflict of interest in the Complaint. As they explain, "[s]uch a rule would be counter-intuitive. Conflict of interest goes only to the Court's standard of review of the administrator's decision, and it is not an element of an ERISA 502(a)(1)(B) prima facie claim."

Defendants respond that Plaintiffs' discovery requests seek information that either should have been or was presented to the Severance Committee, or information that is irrelevant to any claim for benefits under the terms of the plan.

Defendants state that "the general rule in this circuit is that a Plaintiff raising a claim under an ERISA plan is limited to the evidence submitted to and reviewed by the administrative committee." Defendants explain that as a result of this general rule, courts deny discovery requests that seek evidence beyond that which was presented to the administrative committee. They note that the district court applies an abuse of discretion standard of review to the committee's decision in cases in which an administrative committee has the discretion to decide a plaintiff's claim,. Defendants explain that USB's plan contains such discretionary language. As a result, Defendants conclude that "any discovery beyond evidence presented to the Severance Committee is barred."

Defendants concede that limited discovery may be permitted for the purpose of determining whether an administrative committee has a conflict of interest. They argue, however, that this exception is not applicable to the present case. They contend that there is nothing in the record suggesting there was either a procedural error or abuse of discretion. In addition, Defendants emphasize that Plaintiffs did not even raise the conflict of interest issue until responding to Defendants' motion for a protective order.

Defendants also argue that certain discovery Plaintiffs seek is not relevant to the present case. They cite Interrogatory No. 8,[2] which requests that Defendants identify each loan officer employed by USB at the time it was acquired by Firstar Corporation. The Interrogatory further requires the following:

> (a) Identify the compensation plan or basis (whether base salary, base salary plus commissions, commissions only, or otherwise) of each such individual with U.S. Bancorp;
>
> (b) Identify whether each such individual was presented with a new or different compensation plan within 24 months following Firstar Corporations' acquisition of U.S. Bancorp ad, if so, identify the new or different compensation plan presented to each such individual and whether such compensation plan was accepted by the individual;
>
> (c) Identify whether each such individual was offered change in control and/or severance benefits under the U.S. Bancorp Broad-Based Change in Control Severance Pay Program;
>
> (d) For each USBank Loan Officer whose base and draw compensation was reduced by more than 10% within 24 months of Firstar Corporation's acquisition of U.S. Bancorp and who was offered change in control/severance benefits under the U.S. Bancorp Broad-Based Change in Control Severance Pay Program, identify the complete factual basis concerning why each such individual was offered change in control/severance benefits under the subject Severance Pay Program; and
>
> (e) For each USBank Loan Officer whose base and draw compensation was reduced by more than 10% within 24 months of Firstar Corporation's acquisition of U.S. Bancorp and who was not offered change in control/severance benefits under the U.S. Bancorp Broad-Based Change in Control Severance Pay Program, identify the complete factual basis concerning why each such individual was not offered change in control/severance benefits under the subject Severance Pay Program.

---

[2]Document Request No. 4 seeks all documents related to this interrogatory.

Defendants argue that the compensation plans offered to other loan officers have no bearing on whether Plaintiffs themselves are due severance benefits. They argue that whether or not any particular plan participant is entitled to benefits is a fact specific inquiry. Defendants add,

> In fact, as a practical matter it appears that the thrust of the issue Plaintiffs present is whether U.S. Bancorp's new compensation plan that initially did not include guaranteed compensation binds it to pay severance benefits-even though it promptly corrected or clarified that offer to provide guaranteed compensation. The resolution of that issue will not depend on how Defendants treated potentially hundreds of other people in connection with a change in control.

Defendants also argue that the burden or retrieving information concerning over a hundred employees far outweighs whatever slight relevance might exist. Defendants make the same argument concerning Document Request No. 12, which seeks all documents "concerning U.S. Bancorp's and or Firstar Corporation's prospective or actual change(s) in Loan Officers' compensation basis or compensation plans following Firstar Corporation's acquisition of U.S. Bancorp."

**F. <u>The Court's Order.</u>**

The Court grants Plaintiffs' motion to compel in part, and denies Defendants' motion for a protective order in part. The Court recognizes that Plaintiffs' breach of contract claim may well be preempted by their ERISA claim. Paragraph Four of the Complaint actually states that the Severance Pay Program "at all relevant times, has been and is now a 'welfare benefit plan' under 29 U.S.C. § 1002(1) and an 'employee benefit plan' under 29 U.S.C. § 1002(3)." At the moment, however, Defendants have not brought a motion to dismiss Count One. As a result, Plaintiffs correctly argue that discovery should not be denied based only on Defendants' assertion

that the claim is preempted by ERISA. Cases such as Kulinski and Gilmore state that a benefit plan by itself does not always qualify as an ERISA plan. Hence, any discovery concerning whether the Severance Pay Program qualifies as an ERISA plan is relevant, as that issue may prove dispositive of Count One.

With respect to Count Three, discovery concerning the potential conflict of interest is relevant to the standard of review the Court will apply to the administration committee's decision, and, consequently, to what evidence will be presented in the case. At this stage of the case, therefore, the Court can not accept Defendants' argument that Plaintiffs are only entitled to evidence that was presented to the administrative committee. It would be specious reasoning to maintain that Plaintiffs are only entitled to discovery beyond the administrative record after they present evidence beyond the administrative indicating that the administrative decision was affected by a conflict of interest. Cases such as Arnold recognized this problem, and permitted discovery that could potentially demonstrate a conflict of interest, inconsistent plan interpretation, or bad faith.

In Tillery, the Eighth Circuit explained that when a conflict of interest causes a serious breach of a plan administrator's fiduciary duty, courts must apply a less deferential standard of review. And in McGarrah, the Eighth Circuit restated that "when an entity funds a plan and is also the plan administrator there is a rebuttable presumption of a palpable conflict of interest." 234 F.3d at 1031. While the parties disagree over the details of the offers made and rejected, neither party disputes that Defendants fund and administer the Severance Pay Program. As a result, Plaintiffs are entitled to discovery at least concerning the conflict of interest issue.

Defendants have objected to virtually all of Plaintiffs' discovery requests on the same

general bases that underlie their arguments in these motions. In Plaintiffs' motion to compel, however, they do not present specific discovery requests to the Court. Therefore, the Court is not able to determine which requests Defendants should be compelled to answer. As a result, the parties are instructed to meet and confer within the next ten days to determine which discovery requests concern the issues the Court has found to be relevant. Defendants are instructed to supplement their responses to these requests within ten days of the ordered meet and confer.

**THEREFORE, IT IS HEREBY ORDERED that:**

(1) Plaintiffs' Motion to Compel and for Attorneys' Fees is **GRANTED IN PART** with respect to compelling discovery (Doc. No. 13-1) and **DENIED** with respect to attorneys' fees (Doc. No. 13-2);

(2) Defendants' Motion for Protective Order (Doc. No. 9) is **DENIED IN PART**.

Dated: December 9, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge