UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brenda J. Johnson and Patricia K. Ormston,

Plaintiffs,

v.

U.S. Bancorp and U.S. Bancorp Broad-Based Change in Control Severance Pay Program,

Defendants,

Civ. File No. 02-799 (PAM/SRN)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendants' Motion to Dismiss Count One and Motion for Summary Judgment on Counts Two and Three. For the following reasons, the Court grants the Motions to Dismiss and for Summary Judgment.

**BACKGROUND**

Plaintiffs Brenda J. Johnson and Patricia K. Ormston were Mortgage Account Executives for U.S. Bancorp and were participants in the U.S. Bancorp Comprehensive Welfare Benefit Plan, which included the U.S. Bancorp Broad-Based Change in Control Severance Pay Program (the "Severance Program"). The Severance Program provides that for the 24 months following a partial change in control, a participant in the Severance Program may voluntarily terminate his or her employment for "good reason." The Severance Program further defines the term "good reason" to mean "the occurrence of . . . a reduction by the Employer, by more than 10% of the Covered Employee's base and draw, if any, compensation as in effect on the Announcement Date," provided that the reduction is not

FILED MAY 28 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAY 28 2003
DEPUTY CLERK

"replaced by other guaranteed compensation." (Thomas Aff. Ex. B at § 1.18(a).) The Severance Program also defines "good reason" to include a reduction "by more than 20% of the Covered Employees variable compensation opportunity," including "compensation deriving from target bonus programs, bonus plans not utilizing target bonuses, or commission programs." (Id. at § 1.18(b).)

The parties agree that the February 2001 merger between U.S. Bancorp and Firstar Corporation constituted a partial change in control, sufficient to trigger the Severance Program provisions. The parties also agree that prior to the merger, Plaintiffs received a guaranteed base salary plus commissions. After the merger, however, U.S. Bancorp initiated a new compensation plan, effective April 1, 2001. The new compensation plan increased participants' commission rate, but originally paid participants entirely in commission. This plan was changed shortly after its inception to include a "guaranteed non-recoverable draw" equal to participants' base salaries under the pre-merger compensation plan. The guaranteed non-recoverable draw against commissions provided a base amount, paid at regular intervals to participants for those months in which participants' commissions did not exceed the base amount. This draw was not an advance, but instead made non-recoverable, meaning that the participant would not have to repay the draw out of future commission earnings. For the months in which a participants' commissions did exceed their base amount, however, the participants received only commissions.

The pre-merger and post-merger compensation plans differed in that before the

merger, Plaintiffs received a guaranteed salary every other week and commissions on the deals that they closed once a month. Under the new plan, without the amended provision, Plaintiffs would have only received commissions, albeit at a higher rate. Presumably, they would have been allowed an advance for the periods in which they failed to earn any commissions, but this advance would have been paid back to U.S. Bancorp out of future commissions. The new plan, as amended, would in effect pay Plaintiffs whichever was higher: a non-recoverable base amount (equal to their pre-merger salary) or the commissions earned for that period, but never both.

Plaintiffs bring three separate claims against Defendants U.S. Bancorp and the Severance Program. Plaintiffs' first Count articulates a breach-of-contract claim. Count Two alleges violations of Minnesota Statutes §§ 181.14 and 181.171. Count Three sets forth a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Defendants move to dismiss Count One based on the broad preemption provisions contained in ERISA. Defendants also move for summary judgment on Counts Two and Three.

## DISCUSSION

### A. Standard of Review

Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), the Court may only grant the Motion at issue if it appears beyond doubt that Plaintiffs can prove no set of facts which would entitle it to relief. Knapp

v. Hanson, 183 F.3d 786, 788 (8th Cir.1999) (quoting Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986)); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In applying this standard, the Court takes all facts alleged in the Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir.1990). Furthermore, the Court construes the allegations in the Complaint and reasonable inferences arising from it favorably to Plaintiffs. Whitmore v. Harrington, 204 F.3d 784, 784 (8th Cir.2000); Morton, 793 F.2d at 187. However, the Court need not presume the truthfulness of any legal conclusions, opinions, or deductions made in the Complaint, even if they are couched as factual allegations. Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir.1997) (citations omitted).

Defendants also move for summary judgment pursuant to Rule 56(c), which provides that such motions shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 740, 747 (8th Cir. 1996).

The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. ERISA Preemption of Count One**

ERISA's civil enforcement provisions, codified at 29 U.S.C. § 1132(a), are the exclusive vehicle for actions by ERISA-plan participants and beneficiaries seeking to recover benefits due under the plan, to clarify rights to receive future benefits under the plan, to obtain relief from breach of fiduciary responsibility and to assert improper processing of a claim for benefits. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52-56 (1987), quoted in Fink v. Dakotacare, 324 F.3d 685, 688-89 (8th Cir. 2003). Plaintiffs do not dispute that they seek to recover benefits in both Counts One and Three. Instead, in their opposition motion, Plaintiffs argue that more discovery is needed to determine whether the Severance Program is an ERISA plan. However, as Defendants point out, Plaintiffs have unequivocally plead that the Severance Program is an ERISA plan. In their Complaint, Plaintiffs state that the Severance Program "at all relevant times has been and is now a 'welfare benefit plan' under 29 U.S.C. § 1002(1) and an 'employee benefit plan' under 29 U.S.C. § 1002(3)." (Compl. ¶ 4.) Therefore, the Severance Program is an ERISA plan, and the Court grants Defendants' Motion to dismiss the state-law contract claim asserted in Count One.

**C. Summary Judgment on Count Two**

Defendants move for summary judgement on Plaintiffs' second count, alleging violations of Minnesota Statutes §§ 181.14 and 181.171. These provisions govern employers' obligations of timeliness and fairness in paying wages and compensation to their workers. In this case, Plaintiffs allege that U.S. Bancorp violated the state statute when it

refused to pay them for deals that had closed before Plaintiffs terminated their employment.

Plaintiffs' claim hinges on when employees have "earned" commissions. Plaintiffs argue that they earned commissions on deals that closed before they voluntarily terminated their employment with U.S. Bancorp. Defendants respond by claiming that employees do not "earn" commissions until the date of actual distribution of compensation.

Plaintiffs rely on Minnesota Statutes § 181.145, which defines the phrase "[c]ommissions earned through the last day of employment" to include "commissions due for services or merchandise which have actually been delivered to and accepted by the customer by the final day of the sales persons's employment." Plaintiffs use § 181.145 to argue that U.S. Bancorp violated Minnesota Statutes § 181.14. However, the Minnesota Supreme Court has held that § 181.145 should not be used to determine commissions due to employees alleging violations of § 181.13. Holman v. CPT Corp., 457 N.W.2d 740, 742-43 (Minn. 1990) (holding that trial court erred in applying definition of commissions earned under § 181.145, a provision governing independent contractors, to interpret §§ 181.13 and 181.14). Instead, courts should look to the employment contract to determine commissions earned under § 181.14. Id. at 743.

In this case, Plaintiffs do not contest the contractual provisions cited by Defendants and appended to their briefs, which read: "[p]articipants who voluntarily terminate their employment with U.S. Bancorp prior to the date of actual payment are ineligible for an award unless the payment of the award is approved by a direct report of the Chairman and Chief

Executive Officer." (Holly Aff. Ex. F § VI(D).) Therefore, the record shows that Plaintiffs' contracts with U.S. Bancorp provide that they are ineligible for commissions if they voluntarily terminate their employment before the date of actual distribution of compensation. Therefore, no questions of fact remain on whether Defendants violated § 181.14.

**D. Summary Judgment on Count Three**

The heart of the lawsuit is Plaintiffs' ERISA claim. The parties dispute the appropriate deference that the Court should give to the plan administration committee's decision not to provide severance benefits to Plaintiffs. Generally, where an ERISA benefit plan grants discretionary authority to a plan administrator or plan administration committee, the decision of the committee is reviewed for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, Plaintiffs urge the court to apply a lower standard pursuant to Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir.1998). To receive the benefit of the less-deferential standard, Plaintiffs "must present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to [them]." Id. When a conflict is found, the Court should apply a "sliding scale" approach in which "the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity." Id. at 11. In this case, however, the Court need not locate the exact point on the sliding scale because

even under a de novo review, the undisputed evidence establishes that Plaintiffs did not suffer a reduction in their compensation sufficient to satisfy the definition of "good reason" in the Severance Program.

The Severance Program defines "good reason" to include two scenarios relevant to the case at bar. First, the Severance Program describes "good reason" as "the occurrence of . . . a reduction by the Employer, by more than 10% of the Covered Employee's base and draw, if any, compensation as in effect on the Announcement Date," provided that the reduction is not "replaced by other guaranteed compensation." (Thomas Aff. Ex. B at § 1.18(a).) The Severance Program also defines "good reason" to include a reduction "by more than 20% of the Covered Employees variable compensation opportunity," including "compensation deriving from target bonus programs, bonus plans not utilizing target bonuses, or commission programs." (Id. at § 1.18(b).)

In this case, U.S. Bancorp and Firstar merged in late 2000, or early 2001. The companies introduced a new compensation plan on April 2, 2001. Shortly thereafter, the companies amended this post-merger compensation plan. The record shows that the plans differ in important respects. For instance, the pre-merger plan paid participants a set, guaranteed base salary, every other week, and it paid employees commission on each loan that they successfully brokered. In contrast, the first post-merger plan paid employees entirely through commission, albeit at a higher rate that the pre-merger rate of commission. Under this plan, employees would have to take an advance against future commissions for

the months in which they failed to earn a sufficient amount in commissions. Within a few days, the first post-merger plan was amended to provide a safeguard to employees: a non-recoverable guaranteed draw in an amount equal to participants' pre-merger salaries. Under the post-merger compensation plan, as amended, when an employee's commission during a given pay period exceeded that employee's pre-merger base salary, the salary was deducted from the commissions for that pay period. However, when an employee's commission did not exceed his or her pre-merger salary, the employee received a base amount equal to his or her pre-merger salary. This amount was not an advance on future commissions, but instead a non-recoverable amount.

Plaintiffs argue that the first post-merger compensation plan constituted a reduction sufficient to satisfy the definition of "good reason" in the Severance Program. However, the plan administration committee determined that the companies amended the first post-merger compensation plan, before Plaintiffs could receive any benefit or suffer any detriment as a result of the plan. As a result, the dissemination of the first post-merger plan did not actually affect Plaintiffs' compensation. The Court agrees. In order to qualify for severance benefits, Plaintiffs must have actually suffered a reduction in compensation. Here, Plaintiffs can only meet the requirements of "good reason" where they actually received reduced compensation.

Plaintiffs also contend that the amended post-merger plan effectively reduced their compensation, independently establishing "good reason" under the Severance Program. The plan administration committee determined that the amended post-merger plan effectively

replaced the pre-merger plan as "other guaranteed compensation." Consequently, the committee concluded that Plaintiffs had not established "good reason" and were not entitled to severance benefits. The Court concludes that the only reasonable interpretation of the Severance Program is the one used by the administration committee.

The post-merger compensation plan guaranteed participants the same guaranteed compensation as the employees received under the pre-merger plan. Thus, Plaintiffs can not create a question of fact on whether they had "good reason" under § 1.18(a). Likewise, instead of reducing Plaintiffs' variable compensation by 20%, Defendants argue that the increased commission rate under the amended post-merger compensation plan resulted in an increased variable compensation. Therefore, while the pre-merger plan paid participants both a guaranteed salary and commissions, Plaintiffs have failed to create a question of fact on whether they had "good reason" under § 1.18(b).

**CONCLUSIONS**

In their Complaint, Plaintiffs unequivocally pled that the Severance Program was an ERISA plan. They cannot avoid the broad preemption provisions in ERISA by calling into question the veracity of their own Complaint. In addition, no questions of fact remain on the state-law or ERISA claims. Accordingly, after review of the record, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Judgment on the Pleadings on Count One of the Complaint (Clerk Doc. No. 30) is **GRANTED**; and

2. Defendants' Motion for Summary Judgment on Counts Two and Three of the Complaint (Clerk Doc. No. 36) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 28, 2003

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*