UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

November 2, 2004

RECEIVED
BY MAIL
NOV 04 2004
CLERK, US DIST. COURT
ST. PAUL, MN

Mr. Thomas Edward Glennon
THOMAS E. GLENNON & ASSOCIATES
4700 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402

Re: 03-2712 Brenda J. Johnson vs. U.S. Bancorp

Dear Counsel:

The court today issued an opinion in this case. Judgment in accordance with the opinion is also entered today.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. No grace period for mailing is allowed, and the date of the postmark is irrelevant. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

(5148-010199)

Sincerely,

Michael E. Gans

Michael E. Gans
Clerk of Court

cmd

Enclosure(s)

cc: Stephen Paul Lucke
Andrew J. Holly
Richard Sletten

District Court/Agency Case Number(s): CIV 02-799 PAM/SRN

SCANNED
NOV 04 2004
U.S. DISTRICT COURT ST. PAUL

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-2712

| | | |
|---|---|---|
| Brenda J. Johnson; Patricia K. Ormston, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| U.S. Bancorp, et al., | * | |
| | * | |
| Defendants - Appellees. | * | |

Submitted: May 14, 2004
Filed: November 2, 2004

Before LOKEN, Chief Judge, SMITH, Circuit Judge, and DORR,* District Judge.

LOKEN, Chief Judge.

As mortgage loan officers at U.S. Bancorp in Minneapolis, Brenda J. Johnson and Patricia K. Ormston were paid a guaranteed base salary plus commissions based on closed loans. They were also eligible for benefits under the U.S. Bancorp Broad-Based Change in Control Severance Pay Program (the CIC Program), including severance benefits if they resigned for "Good Reason." The written CIC Program defined Good Reason to include "the occurrence . . . within 24 months following a Partial Change in Control [of] a reduction by the Employer, by more than 10%, of the

*The HONORABLE RICHARD E. DORR, United States District Judge for the Western District of Missouri, sitting by designation.

Covered Employee's base . . . compensation" unless that base compensation "is replaced by other guaranteed compensation."

In February 2001, U.S. Bancorp merged with Firstar Corporation. The merger was a Partial Change in Control for purposes of the CIC Program. Some months later, Johnson and Ormston resigned and filed claims for severance benefits. After U.S. Bancorp's Severance Administration Committee denied the claims, Johnson and Ormston filed this lawsuit, asserting a federal law claim for wrongful denial of benefits under the Employee Retirement Income Security Act (ERISA), see 29 U.S.C. § 1132(a)(1)(B), and state law claims for breach of contract and to recover statutory penalties for the late payment of earned commissions. The district court[1] dismissed the breach of contract claim on the pleadings and granted U.S. Bancorp summary judgment dismissing the remaining claims. Johnson and Ormston appeal. Reviewing these issues de novo, we affirm. See Fink v. Dakotacare, 324 F.3d 685, 687 (8th Cir. 2003) (standard of review).

## I. The Breach of Contract and ERISA Claims.

Johnson and Ormston allege -- and we assume these allegations are true for purposes of this appeal -- that they were told before and after the merger, in meetings and in memoranda, that U.S. Bancorp would change their compensation to Firstar's commissions-only plan, and that change-in-control severance benefits would be paid to those who declined to work under the new compensation plan. Consistent with these informal communications, on April 2, 2001, U.S. Bancorp distributed a written 2001 Compensation Plan providing no guaranteed base salary. But bank management apparently revisited the decision to trigger severance pay benefits, because on April 5, a supervisor advised Johnson and Ormston that the new plan would be changed to

---

[1]The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota.

include a guaranteed draw, and on April 19, they received an "Addendum One" to the new plan providing for "guaranteed non-recoverable draws" equal to their prior guaranteed base salaries.

Six weeks later, Johnson and Ormston resigned and filed claims for severance benefits, arguing they had Good Reason to resign within the meaning of the CIC Program because U.S. Bancorp eliminated their guaranteed base salary after a partial change in control. The Severance Administration Committee denied the claims, explaining there was no "occurrence" within the meaning of the CIC Program because "the reduction in base compensation that was communicated . . . was replaced by a guaranteed, non-recoverable draw in the same amount before [the] base compensation was ever actually reduced."

1. As the district court recognized, the heart of this lawsuit is plaintiffs' alternative claims for breach of an employment contract under state law or for denial of employee benefits governed by ERISA. Plaintiffs' Complaint alleged that the CIC Program "at all relevant times, has been and is now a 'welfare benefit plan' under 29 U.S.C. § 1002(1) and an 'employee benefit plan' under 29 U.S.C. § 1002(3).'"[2] It is well-established that ERISA's civil enforcement provisions are the exclusive remedies for participants seeking to recover benefits under an ERISA plan. <u>See</u> 29 U.S.C. § 1144(a); <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 52-56 (1987); <u>Fink</u>, 324 F.3d at 688-89. Thus, the district court properly dismissed the state law breach-of-employment-contract claim on the pleadings. Plaintiffs' argument that they were entitled to discovery on this claim is without merit.

---

[2]The CIC Program is part of the U.S. Bancorp Comprehensive Welfare Benefit Plan, which expressly incorporates various ERISA provisions and is unquestionably an "employee welfare benefit plan" covered by ERISA. <u>See</u> <u>Emmenegger v. Bull Moose Tube Co.</u>, 197 F.3d 929, 934-35 (8th Cir. 1999).

2. As an alternative breach of contract theory, Johnson and Ormston argue that (i) U.S. Bancorp breached a promise to pay severance benefits if they continued to work after the merger and if Firstar changed their compensation to a commissions-only plan, and (ii) this created a free-standing contract unrelated to the CIC Program and therefore not preempted by ERISA. For support, they cite our recent decision in Eide v. Grey Fox Technical Services Corp., 329 F.3d 600, 607 (8th Cir. 2003). The contention is fatally flawed. Unlike the employees in Eide, Johnson and Ormston remained eligible for CIC Program benefits after the merger. The alleged promise was that benefits would be paid *in accordance with the CIC Program* if their guaranteed base compensation was eliminated after the partial change in control. This promise, even if it constituted the offer of a unilateral contract under state law, clearly related to the ERISA plan. An employer's promise that ERISA plan benefits will be paid if a future contingency occurs does not create a "free-standing contract" within the meaning of Eide.

3. Turning to plaintiffs' federal law claim for the wrongful denial of ERISA benefits, the district court concluded that Johnson and Ormston did not have Good Reason to resign within the meaning of the CIC Program because (i) the first post-merger compensation plan distributed on April 2, 2001, "did not actually affect Plaintiffs' compensation," and (ii) the amended post-merger plan reflected in the April 19 Addendum One "guaranteed participants the same guaranteed compensation" in the form of a non-recoverable draw. Accordingly, the court upheld the Severance Administration Committee's decision.[3]

---

[3]The court avoided a dispute over the applicable ERISA standard of review by reviewing the Severance Administration Committee's decision de novo. This obviated the need for discovery regarding the plan administrator's alleged conflicts of interest, inconsistent plan interpretation, and bad faith. Thus, the district court did not abuse its discretion in deciding U.S. Bancorp's dispositive motions before taking up plaintiffs' request for further discovery on these issues.

On appeal, Johnson and Ormston first argue that they are entitled to CIC Program benefits because the first post-merger plan stated that it replaced all prior compensation plans. Therefore, this plan "indisputably" eliminated their guaranteed base salaries. But the CIC Program requires an "occurrence" to trigger severance benefits. U.S. Bancorp amended the new plan to provide guaranteed draws before the end of the April 2001 pay period. It is undisputed that Johnson and Ormston never received a post-merger paycheck that did not include a guaranteed draw equal to their prior base salaries. If they had quit on April 3 or April 4, or alleged some form of detrimental reliance, we might have a different case. But on this record, we agree with the district court that the Severance Administration Committee's decision is "the only reasonable interpretation" of the CIC Program.

Johnson and Ormston further argue that the district court erred in concluding that the guaranteed draws were "other guaranteed compensation" within the meaning of the CIC Program because U.S. Bancorp later "recovered" those draws by reducing their post-termination commission payments. The Committee determined that reducing post-termination commissions by the amount of a guaranteed draw did not change the fact that the draw was "other guaranteed compensation." Like the district court, we agree with this interpretation of the CIC Program provisions.

## II. The State Law Claim for Statutory Penalties.

Under Minnesota law, "wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment." Minn. Stat. § 181.14, subd. 1(a). An employer who violates this duty is liable for "civil penalties or damages." Minn. Stat. § 181.171, subd. 1. After Johnson and Ormston resigned, U.S. Bancorp sent them final commission payments, deducting amounts equal to the guaranteed draws paid under the post-merger plan. When Johnson and Ormston protested the deductions, U.S. Bancorp paid them the deducted amounts about a

month later. They claim that statutory penalties are owing because they were not paid within twenty-four hours of demand, as § 181.14, subd. 2, requires.

Plaintiffs' pre-merger employment contracts provided that U.S. Bancorp's Chairman and Chief Executive Officer must approve the payment of unpaid commissions to an employee who voluntarily resigns. As no such approval accompanied the post-termination payments to Johnson and Ormston, the district court granted summary judgment dismissing this claim because the allegedly late-paid commissions were not "earned" for purposes of § 181.14. See Holman v. CPT Corp., 457 N.W.2d 740, 742-43 (Minn. App. 1990).

On appeal, Johnson and Ormston argue that unpaid commissions on loans closed before they resigned were "earned" because (1) U.S. Bancorp customarily paid such commissions to loan officers who resigned in good standing, and (2) the contracts on which the district court relied were superseded by the post-merger compensation plan. We disagree. First, plaintiffs' vague assertion of a customary practice does not provide the clear and convincing evidence required under Minnesota law to prove a parol modification of an unambiguous written contract. See Reliable Metal, Inc. v. Shakopee Valley Printing, Inc., 407 N.W.2d 684, 687 (Minn. App. 1987). Second, Johnson and Ormston never accepted the post-merger compensation plan, so the district court properly looked to the pre-merger plan to determine what commissions were earned. Moreover, under the post-merger plan, U.S. Bancorp was entitled to deduct guaranteed draws from commission payments, so that plan did not obligate U.S. Bancorp to pay the allegedly tardy commissions.

The judgment of the district court is affirmed.

______________________________