**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **BRENDA J. JOHNSON AND PATRICIA K. ORMSTON,** Plaintiffs, v. **U.S. BANCORP AND U.S. BANCORP BROAD-BASED CHANGE IN CONTROL SEVERANCE PAY PROGRAM,** Defendants. | ) | Civil File No. 02-799 (PAM/JSM) **SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES** |

## I. INTRODUCTION

Plaintiffs Brenda J. Johnson and Patricia K. Ormston (collectively "Johnson/Ormston" or "Plaintiffs") respectfully submit this Supplemental Memorandum of Law in opposition to Defendant U.S. Bancorp's motion for an award of attorneys' fees related to the defense of Plaintiffs' state law breach of contract claim (Count One of Plaintiffs' Complaint) in this action.

On May 28, 2003, this Court (the Honorable Paul A. Magnuson) dismissed Plaintiffs' state law breach of contract claim against Defendant U.S. Bancorp (Count One) on the pleadings and granted summary judgment on Plaintiffs' state law claim for statutory penalties against U.S. Bancorp (Count Two) and Plaintiffs' federal law claim for wrongful denial of ERISA benefits against Defendant Severance Pay Program (Count Three). Plaintiffs timely filed a Notice of Appeal on June 25, 2003. On May 14, 2004, Johnson/Ormston orally argued their appeal from the District Court's entry of final judgment against them to the United States Court of Appeals for the Eighth Circuit. On November 2, 2004, the Eighth Circuit issued its opinion affirming the District Court's judgment



SCANNED
JAN - 4 2005
U.S. DISTRICT COURT MPLS

dismissing such claims. A copy of the Eighth Circuit's Opinion is attached at Tab 1 for this Court's reference. U.S. Bancorp thereafter requested that the Eighth Circuit remand the issue of appellate attorneys' fees to this Court so that the "district court can then resolve this issue along with U.S. Bancorp's currently pending motion for attorneys' fees incurred during the district court action." U.S. Bancorp's Motion for Remand, at 1. By its Order dated December 6, 2004, the Eighth Circuit denied U.S. Bancorp's motion that that Court remand U.S. Bancorp's motion for an award of appellate attorneys' fees to this Court.

Johnson's/Ormston's submissions previously filed with this Court and the Eighth Circuit's Opinion make clear that U.S. Bancorp's motion for an award of attorneys' fees should be denied in its entirety because Plaintiffs were substantially justified in asserting the state law breach of contract claim against U.S. Bancorp, such claim was brought in good faith, and the claim was not brought "simply in an effort to harass" U.S. Bancorp.

## II. DISCUSSION

The Eighth Circuit's Opinion succinctly articulates the factual basis underlying Johnson's/Ormston's assertion of the alternative claims for breach of an employment contract under state law and for denial of employee benefits governed by ERISA:

> "As mortgage loan officers at U.S. Bancorp in Minneapolis, Brenda J. Johnson and Patricia K. Ormston were paid a guaranteed base salary plus commissions based on closed loans. They were also eligible for benefits under the U.S. Bancorp Broad-Based Change in Control Severance Pay Program (the CIC Program), including severance benefits if they resigned for 'Good Reason.' The written CIC Program defined Good Reason to include 'the occurrence ... within 24 months following a Partial Change in Control [of] a reduction by the Employer, by more than 10%, of the Covered Employee's base ... compensation' unless that base compensation 'is replaced by other guaranteed compensation.'
>
> In February 2001, U.S. Bancorp merged with Firstar Corporation. The merger was a Partial Change in Control for purposes of the CIC Program.

* * *

> Johnson and Ormston allege – and we assume these allegations are true for purposes of this appeal – that they were told before and after the merger, in meetings and in memoranda, that U.S. Bancorp would change their compensation to Firstar's commissions-only plan, and that change-in-control severance benefits would be paid to those who declined to work under the new compensation plan. Consistent with these informal communications, on April 2, 2001, U.S. Bancorp distributed a written 2001 Compensation Plan providing no guaranteed base salary. But bank management apparently revisited the decision to trigger severance pay benefits, because on April 5, a supervisor advised Johnson and Ormston that the new plan would be changed to include a guaranteed draw, and on April 19, they received an 'Addendum One' to the new plan providing for 'guaranteed non-recoverable draws' equal to their prior guaranteed base salaries.
>
> ...Johnson and Ormston [later] resigned and filed claims for severance benefits, arguing they had Good Reason to resign within the meaning of the CIC Program because U.S. Bancorp eliminated their guaranteed base salary after a partial change in control."

See Opinion, at 1-3.

The District Court and the Eighth Circuit had first-hand observations of the parties' high levels of professionalism, preparedness and competency in the briefing and oral arguments of Johnson's/Ormston's opposition to Defendants' dispositive motion and the appeal of the District Court's entry of judgment against Plaintiffs.[1] The parties' briefing and oral argument made clear that Johnson's/Ormston's assertion of claims and appeal of the District Court's dismissal of the breach of contract claim were not indicative of any bad faith, harassment or other improper purpose on Johnson's/Ormston's part. In fact, the Eighth Circuit noted that Johnson's/Ormston's state law breach of unilateral contract claim against U.S. Bancorp was properly stated but for U.S. Bancorp's revisitation of its decision to trigger severance pay benefits after the occurrence of the event which Plaintiffs alleged triggered their right to receive the benefits. Opinion at 2-3. Additionally, the

[1] The oral argument on Johnson's/Ormston's appeal before the Eighth Circuit may be heard/reviewed on the Eighth Circuit's website, www.ca8.courts.gov.

Eighth Circuit noted that had Johnson/Ormston resigned from employment after U.S. Bancorp changed their compensation plans and before U.S. Bancorp offered them a revised compensation plan, or alleged a form of detrimental reliance, "we might have a different case." Opinion at 5. Finally, the Eighth Circuit noted that Johnson/Ormston may have stated a breach of unilateral contract claim under Minnesota state law but for ERISA preemption of the claim. Opinion at 4. The Eighth Circuit also had to distinguish Johnson's/Ormston's preempted breach of contract claim from the state law breach of contract claim successfully asserted by employees in the Eighth Circuit's recent decision in Eide v. Grey Fox Technical Services Corp., 329 F.3d 600, 607 (8th Cir. 2003), which case was not considered by the District Court in its dismissal of Johnson's/Ormston's breach of contract claim in this action.

U.S. Bancorp's motion for attorneys' fees is based upon 29 U.S.C. § 1132(g)(1), which provides, in pertinent part, as follows:

> "**In any action under this subchapter ... by a participant** ..., the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." (Emphasis added).

The explicit language in the statute makes absolutely clear that attorneys' fees may only be awarded "in an [] action under [ERISA] ... by a participant." However, the cause of action for which U.S. Bancorp now seeks to recover attorneys' fees is Johnson's/Ormston's state law breach of contract claim brought as employees to enforce promises of their employer, not an ERISA claim brought by participants of a plan against the Plan.[2] The ERISA fee-shifting statute (29 U.S.C. §

[2] The Affidavit of Stephen P. Lucke in Support of Defendants' Motion for Attorneys' Fees specifically notes that none of the fees now sought by U.S. Bancorp relate to the ERISA claim to which the ERISA fee-shifting statute applies. In his Affidavit, Mr. Lucke states that the invoices for which U.S. Bancorp seeks an award of attorneys' fees "only list fees related to Count I of Plaintiffs' Complaint, the state law breach of contract claim, and work done in connection with such claim ...

1132(g)(1)) may not be invoked as a basis of recovering attorneys' fees with respect to a stand-alone state law breach of contract claim.

Moreover, it should be abundantly clear to this Court following its review of the parties' briefs and consideration of the parties' oral argument at the dispositive motion and appeal hearings that Johnson's/Ormston's claims which were brought based upon U.S. Bancorp's actions and conduct were substantially justified and taken in good faith, and that neither Johnson nor Ormston was "simply out to harass" U.S. Bancorp. Little v. Cox's Supermarkets, 71 F.3d 637, 644 (7th Cir. 1995). Johnson and Ormston have individually and collectively certified that each statement of fact set forth in their respective affidavits establishing the factual basis underlying their bringing of the breach of employment contract claims against U.S. Bancorp was true and accurate to the best of her/their knowledge. See Affidavits of Brenda J. Johnson and Patricia K. Ormston, at ¶¶ 2 and 3. Johnson's/Ormston's assertion of alternative allegations in the Complaint alleging that U.S. Bancorp's admitted verbal and written statements to Johnson/Ormston both before and after U.S. Bancorp's merger with Firstar Corporation became terms and conditions of their employment contract with U.S. Bancorp was proper pleading in the alternative authorized by the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 8(e)(2). It is important to note that Defendants' initial Answer and First Amended Answer in this action admit (in ¶ 4) that the subject Severance Pay Program was an ERISA plan, and do not specifically deny Johnson's/Ormston's alternative allegations that the Severance Pay Program became a term and condition of their employment relationship with U.S. Bancorp (see Answer and First Amended Answer, ¶ 11). Johnson's/Ormston's legal counsel has represented and certified that in his professional judgment, the failure to assert the state law breach

---

[T]hey do not reflect work that is tied with the ERISA claim … or time entries that include work on more than just the breach of contract matter." See Lucke Affidavit, ¶ 5.

of employment contract claim in Count One of the Complaint in these circumstances would constitute ineffective legal representation of Johnson's/Ormston's interests, if not professional negligence. See Affidavit of Thomas E. Glennon in Opposition to Defendants' Motion for Attorneys' Fees, ¶ 6.

Although the Eighth Circuit unanimously affirmed this Court's dismissal of the state law breach of contract claim, Magistrate Judge Nelson noted the proper basis of initially bringing the alternative state law breach of contract and federal ERISA claims in these circumstances. See Order dated December 9, 2002. This claim was brought in good faith in the belief that employees should be able to enforce the promises which employers make to their employees. This claim was based upon and brought to enforce promises admittedly made by U.S. Bancorp to these employees, not to harass U.S. Bancorp. Johnson/Ormston respectfully submit that this Court must deny U.S. Bancorp's request for attorneys' fees in its entirety.[3] This Court's failure to do so in these circumstances would result in the unjust punishment of employees who seek nothing more than to enforce an employer's admitted - and unkept - promises to such employees, and would

---

[3]U.S. Bancorp's motion seeks to recover attorneys' fees incurred in researching, drafting and arguing Defendants' motion for a Protective Order which was denied by Magistrate Judge Nelson and unsuccessfully defending Johnson's/Ormston's motion to compel discovery (see Order dated December 9, 2002, Exhibit 9 to the Affidavit of Thomas E. Glennon in Opposition to Defendants' Motion for Attorneys' Fees), attorneys' fees incurred in answering Johnson's/Ormston's discovery requests to which Magistrate Judge Nelson ordered Defendants to respond, and attorneys' fees attempting to limit the scope of Magistrate Judge Nelson's Order compelling Defendants to respond to the discovery. See Affidavit of Stephen P. Lucke in Support of Defendants' Motion for Attorneys' Fees, ¶ 5. It is axiomatic that U.S. Bancorp may not recover attorneys' fees incurred in its assertion of "specious" positions (using Magistrate Judge Nelson's word from her Order, at p. 13) in the Protective Order/discovery motions. Moreover, Magistrate Judge Nelson's Order and analysis make absolutely clear that Johnson/Ormston were substantially justified in bringing the alternative state law breach of contract claim and did not engage in bad faith given the pertinent federal cases, and provide no support for an argument that Johnson/Ormston brought such claims "simply to harass" U.S. Bancorp. See Little v. Cox's Supermarkets, 71 F. 3d 637, 644 (7th Cir. 1995).

unquestionably have a chilling effect on the rights of these and similarly-situated employees.

## III. CONCLUSION

For these reasons, Plaintiffs Brenda J. Johnson and Patricia K. Ormston respectfully request that the Court deny Defendant U.S. Bancorp's motion for attorneys' fees in its entirety as (1) Count One of Plaintiffs' Complaint purports to assert a state law breach of employment contract claim against U.S. Bancorp (Plaintiffs' former employer) which is not an "action under [ERISA] by a participant" in which this Court has authority to award attorney's fees under 29 U.S.C. § 1132(g)(1), and (2) Plaintiffs' claims against U.S. Bancorp in Count One of the Complaint were substantially justified, brought in good faith, and were not brought "simply to harass" U.S. Bancorp.

Respectfully submitted,

Dated: January 4, 2005

**THOMAS E. GLENNON & ASSOCIATES, P.A.**

By______________________________

Thomas E. Glennon, #124035
4700 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 347-0426

**ATTORNEYS FOR PLAINTIFFS**

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-2712

| | | |
|---|---|---|
| Brenda J. Johnson; Patricia K. Ormston, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| U.S. Bancorp, et al., | * | |
| | * | |
| Defendants - Appellees. | * | |

Submitted: May 14, 2004
Filed: November 2, 2004

Before LOKEN, Chief Judge, SMITH, Circuit Judge, and DORR,* District Judge.

LOKEN, Chief Judge.

As mortgage loan officers at U.S. Bancorp in Minneapolis, Brenda J. Johnson and Patricia K. Ormston were paid a guaranteed base salary plus commissions based on closed loans. They were also eligible for benefits under the U.S. Bancorp Broad-Based Change in Control Severance Pay Program (the CIC Program), including severance benefits if they resigned for "Good Reason." The written CIC Program defined Good Reason to include "the occurrence . . . within 24 months following a Partial Change in Control [of] a reduction by the Employer, by more than 10%, of the

*The HONORABLE RICHARD E. DORR, United States District Judge for the Western District of Missouri, sitting by designation.

Covered Employee's base . . . compensation" unless that base compensation "is replaced by other guaranteed compensation."

In February 2001, U.S. Bancorp merged with Firstar Corporation. The merger was a Partial Change in Control for purposes of the CIC Program. Some months later, Johnson and Ormston resigned and filed claims for severance benefits. After U.S. Bancorp's Severance Administration Committee denied the claims, Johnson and Ormston filed this lawsuit, asserting a federal law claim for wrongful denial of benefits under the Employee Retirement Income Security Act (ERISA), see 29 U.S.C. § 1132(a)(1)(B), and state law claims for breach of contract and to recover statutory penalties for the late payment of earned commissions. The district court[1] dismissed the breach of contract claim on the pleadings and granted U.S. Bancorp summary judgment dismissing the remaining claims. Johnson and Ormston appeal. Reviewing these issues de novo, we affirm. See Fink v. Dakotacare, 324 F.3d 685, 687 (8th Cir. 2003) (standard of review).

## I. The Breach of Contract and ERISA Claims.

Johnson and Ormston allege -- and we assume these allegations are true for purposes of this appeal -- that they were told before and after the merger, in meetings and in memoranda, that U.S. Bancorp would change their compensation to Firstar's commissions-only plan, and that change-in-control severance benefits would be paid to those who declined to work under the new compensation plan. Consistent with these informal communications, on April 2, 2001, U.S. Bancorp distributed a written 2001 Compensation Plan providing no guaranteed base salary. But bank management apparently revisited the decision to trigger severance pay benefits, because on April 5, a supervisor advised Johnson and Ormston that the new plan would be changed to

---

[1]The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota.

include a guaranteed draw, and on April 19, they received an "Addendum One" to the new plan providing for "guaranteed non-recoverable draws" equal to their prior guaranteed base salaries.

Six weeks later, Johnson and Ormston resigned and filed claims for severance benefits, arguing they had Good Reason to resign within the meaning of the CIC Program because U.S. Bancorp eliminated their guaranteed base salary after a partial change in control. The Severance Administration Committee denied the claims, explaining there was no "occurrence" within the meaning of the CIC Program because "the reduction in base compensation that was communicated . . . was replaced by a guaranteed, non-recoverable draw in the same amount before [the] base compensation was ever actually reduced."

1. As the district court recognized, the heart of this lawsuit is plaintiffs' alternative claims for breach of an employment contract under state law or for denial of employee benefits governed by ERISA. Plaintiffs' Complaint alleged that the CIC Program "at all relevant times, has been and is now a 'welfare benefit plan' under 29 U.S.C. § 1002(1) and an 'employee benefit plan' under 29 U.S.C. § 1002(3).'"[2] It is well-established that ERISA's civil enforcement provisions are the exclusive remedies for participants seeking to recover benefits under an ERISA plan. See 29 U.S.C. § 1144(a); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52-56 (1987); Fink, 324 F.3d at 688-89. Thus, the district court properly dismissed the state law breach-of-employment-contract claim on the pleadings. Plaintiffs' argument that they were entitled to discovery on this claim is without merit.

---

[2]The CIC Program is part of the U.S. Bancorp Comprehensive Welfare Benefit Plan, which expressly incorporates various ERISA provisions and is unquestionably an "employee welfare benefit plan" covered by ERISA. See Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 934-35 (8th Cir. 1999).

2. As an alternative breach of contract theory, Johnson and Ormston argue that (i) U.S. Bancorp breached a promise to pay severance benefits if they continued to work after the merger and if Firstar changed their compensation to a commissions-only plan, and (ii) this created a free-standing contract unrelated to the CIC Program and therefore not preempted by ERISA. For support, they cite our recent decision in Eide v. Grey Fox Technical Services Corp., 329 F.3d 600, 607 (8th Cir. 2003). The contention is fatally flawed. Unlike the employees in Eide, Johnson and Ormston remained eligible for CIC Program benefits after the merger. The alleged promise was that benefits would be paid *in accordance with the CIC Program* if their guaranteed base compensation was eliminated after the partial change in control. This promise, even if it constituted the offer of a unilateral contract under state law, clearly related to the ERISA plan. An employer's promise that ERISA plan benefits will be paid if a future contingency occurs does not create a "free-standing contract" within the meaning of Eide.

3. Turning to plaintiffs' federal law claim for the wrongful denial of ERISA benefits, the district court concluded that Johnson and Ormston did not have Good Reason to resign within the meaning of the CIC Program because (i) the first post-merger compensation plan distributed on April 2, 2001, "did not actually affect Plaintiffs' compensation," and (ii) the amended post-merger plan reflected in the April 19 Addendum One "guaranteed participants the same guaranteed compensation" in the form of a non-recoverable draw. Accordingly, the court upheld the Severance Administration Committee's decision.[3]

---

[3]The court avoided a dispute over the applicable ERISA standard of review by reviewing the Severance Administration Committee's decision de novo. This obviated the need for discovery regarding the plan administrator's alleged conflicts of interest, inconsistent plan interpretation, and bad faith. Thus, the district court did not abuse its discretion in deciding U.S. Bancorp's dispositive motions before taking up plaintiffs' request for further discovery on these issues.

On appeal, Johnson and Ormston first argue that they are entitled to CIC Program benefits because the first post-merger plan stated that it replaced all prior compensation plans. Therefore, this plan "indisputably" eliminated their guaranteed base salaries. But the CIC Program requires an "occurrence" to trigger severance benefits. U.S. Bancorp amended the new plan to provide guaranteed draws before the end of the April 2001 pay period. It is undisputed that Johnson and Ormston never received a post-merger paycheck that did not include a guaranteed draw equal to their prior base salaries. If they had quit on April 3 or April 4, or alleged some form of detrimental reliance, we might have a different case. But on this record, we agree with the district court that the Severance Administration Committee's decision is "the only reasonable interpretation" of the CIC Program.

Johnson and Ormston further argue that the district court erred in concluding that the guaranteed draws were "other guaranteed compensation" within the meaning of the CIC Program because U.S. Bancorp later "recovered" those draws by reducing their post-termination commission payments. The Committee determined that reducing post-termination commissions by the amount of a guaranteed draw did not change the fact that the draw was "other guaranteed compensation." Like the district court, we agree with this interpretation of the CIC Program provisions.

**II. The State Law Claim for Statutory Penalties.**

Under Minnesota law, "wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment." Minn. Stat. § 181.14, subd. 1(a). An employer who violates this duty is liable for "civil penalties or damages." Minn. Stat. § 181.171, subd. 1. After Johnson and Ormston resigned, U.S. Bancorp sent them final commission payments, deducting amounts equal to the guaranteed draws paid under the post-merger plan. When Johnson and Ormston protested the deductions, U.S. Bancorp paid them the deducted amounts about a

month later. They claim that statutory penalties are owing because they were not paid within twenty-four hours of demand, as § 181.14, subd. 2, requires.

Plaintiffs' pre-merger employment contracts provided that U.S. Bancorp's Chairman and Chief Executive Officer must approve the payment of unpaid commissions to an employee who voluntarily resigns. As no such approval accompanied the post-termination payments to Johnson and Ormston, the district court granted summary judgment dismissing this claim because the allegedly late-paid commissions were not "earned" for purposes of § 181.14. See Holman v. CPT Corp., 457 N.W.2d 740, 742-43 (Minn. App. 1990).

On appeal, Johnson and Ormston argue that unpaid commissions on loans closed before they resigned were "earned" because (1) U.S. Bancorp customarily paid such commissions to loan officers who resigned in good standing, and (2) the contracts on which the district court relied were superseded by the post-merger compensation plan. We disagree. First, plaintiffs' vague assertion of a customary practice does not provide the clear and convincing evidence required under Minnesota law to prove a parol modification of an unambiguous written contract. See Reliable Metal, Inc. v. Shakopee Valley Printing, Inc., 407 N.W.2d 684, 687 (Minn. App. 1987). Second, Johnson and Ormston never accepted the post-merger compensation plan, so the district court properly looked to the pre-merger plan to determine what commissions were earned. Moreover, under the post-merger plan, U.S. Bancorp was entitled to deduct guaranteed draws from commission payments, so that plan did not obligate U.S. Bancorp to pay the allegedly tardy commissions.

The judgment of the district court is affirmed.

---

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of January, 2005, a true and correct copy of Plaintiffs Brenda J. Johnson's and Patricia K. Ormston's Supplemental Memorandum of Law in Opposition to Defendants' Motion for Attorneys' Fees in the matter of Brenda J. Johnson and Patricia K. Ormston v. U.S. Bancorp and U.S. Bancorp Broad-Based Change in Control Severance Pay Program, Civil File No. 02-799 (PAM/JSM), was caused to be served, via hand delivery, by delivering the same to Stephen P. Lucke, Esq., Andrew J. Holly, Esq., and Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498, attorneys for Defendants U.S. Bancorp and U.S. Bancorp Broad-Based Change in Control Severance Pay Program in said matter.

Dated: January 4, 2005

Thomas E. Glennon