UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRENDA J. JOHNSON, et al., CIVIL NO. 02-799 (PAM/JSM)

Plaintiffs,

v. REPORT AND RECOMMENDATION

U.S. BANCORP, et al.,

Defendants.

The above matter came on for hearing before the undersigned upon defendants' Motion for Attorney's Fees [Docket No. 52]. Tom Glennon, Esq. appeared on behalf of plaintiffs and Andrew Holly, Esq. appeared on behalf of defendants. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons discussed below, IT IS RECOMMENDED THAT:

Defendants' Motion for Attorney Fees [Docket No. 52] be **DENIED**.

## MEMORANDUM

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Brenda Johnson and Patricia Ormston were loan officers employed with defendant U.S Bancorp. They were paid a guaranteed base salary plus commissions. Prior to the events leading up to this suit, Johnson had received a yearly base salary of $34,068 and Ormston had received a yearly base salary of $35,364.

During plaintiffs' tenure with U.S. Bancorp, U.S Bancorp adopted the U.S. Bancorp Broad-Based Change in Control Severance Pay Program ("the Severance Pay Program"),

which provided severance benefits to employees if they resigned for “good reason” within 24 months following a partial change in control of U.S. Bancorp. Under the Severance Pay Program, ”good reason” constituted reduction of an eligible employee’s “base” and “draw” compensation by more than 10% within 24 months following a partial change of control. An employee’s “base” and “draw” compensation were deemed reduced if they were taken away and not substituted by other “guaranteed compensation.”

In late 2000 and early 2001, U.S. Bancorp informed plaintiffs that it was going to be acquired by Firstar Corporation (“Firstar”). In addition, plaintiffs were notified that their compensation would be changed to a commissions-only compensation plan, thereby eliminating their guaranteed base salary. Plaintiffs also alleged that the President of Firstar told them that loan officers who elected not to accept the commission-only compensation plans would be presented with the change in control severance packages.

In conjunction with this change in compensation, U.S. Bancorp delivered to plaintiffs, on April 2, 2001, the Loan Officer Compensation Plan & General Business Policies (“the 2001 Compensation Plan”), effective as of April 1, 2001, which nullified all previous compensation plans and put into place commissions-only compensation with no guaranteed base salary. Plaintiffs asserted that on April 3, 2001, a Firstar human resources employee stated to plaintiffs that they would receive a letter from human resources explaining their option to stay with U.S. Bancorp/Firstar or to elect to leave employment and receive change in control severance packages. Plaintiffs never received such a letter.

According to plaintiffs, on April 5, 2001, plaintiffs attended a meeting with U.S. Bancorp personnel at which time U.S. Bancorp asked to see Johnson’s 2001 Compensation Plan

document in order to amend it. Johnson alleged that U.S. Bancorp was going to offer her a guaranteed draw in an amount equal to her former base salary. U.S. Bancorp then modified the commission schedule that was attached to Johnson's 2001 Compensation Plan by inserting the following handwritten language into it beside the printed language that stated "Draw Against Commission (Subject to change at anytime):" "$34,068.00 nonrecoverable draw against commission per year. (At $2,839 per month)." U.S. Bancorp did not make a similar amendment to Ormston's 2001 Compensation Plan, but told her it would send such an amended plan to her. U. S. Bankcorp never did that.

On April 19, 2001, plaintiffs received a document titled "Addendum One to Firstar Home Mortgage Loan Officer Compensation Plan Commission Schedule" from U.S. Bancorp, which added the following language to the schedule: a "guaranteed non-recoverable draw equal to each plaintiff's base salary under the pre-merger compensation, effective through 3/31/03." This document did not state that it was modifying the terms and conditions of the 2001 Compensation Plan.

On May 3, 2001, plaintiffs were told to sign the 2001 Compensation Plan or face termination. Thereafter, plaintiffs tendered their respective resignations for "good reason". U.S. Bancorp and the Severance Pay Program refused to provide plaintiffs with severance benefits because they determined that plaintiffs had not resigned for good reason, i.e. their base compensation was replaced by a guaranteed, non-recoverable draw in the same amount.

In April of 2002, plaintiffs initiated the present action. Their Complaint consisted of three claims. In their first claim, plaintiffs alleged that U.S. Bancorp's failure and refusal to

provide them with change in control severance payments constituted a breach of U.S. Bancorp's employment contracts with them. Count Two of the Complaint alleged that defendants failed to timely pay their wages and commissions due within the time required by Minn. Stat. §§ 181.14 and 181.171. In Count Three, plaintiffs asserted that the refusal by defendants to pay to severance benefits pursuant to the Severance Pay Program was "not credible, not reasonable, clearly in error and are an abuse and [sic] discretion and are arbitrary and capricious determinations, in breach of the provisions of the subject Program and in violation of ERISA."

During the pendency of the litigation, plaintiffs served discovery on defendants relating to the claims set forth in their Complaint. Defendants refused to produce information or documents beyond the administrative record created before the U.S. Bancorp Severance Administration Committee, since it was beyond the scope of ERISA. Defendants moved for a protective order and plaintiffs responded with their own motion to compel. The motions were heard before Magistrate Judge Susan Nelson. Magistrate Judge Nelson in granting in part and denying in part the parties' respective discovery motions found:

> The Court recognizes that plaintiff's breach of contract may be well preempted by their ERISA claim. Paragraph Four of the Complaint actually states that the Severance Pay Program 'at all relevant times, has been and is now a 'welfare benefit plan' under 29 U.S.C. § 1002(1) and an 'employee benefit plan' under 29 U.S.C. § 1003(3).' At the moment, however, Defendants have not brought a motion to dismiss Count One. As a result, Plaintiffs correctly argue that discovery should not be denied based only Defendants' assertion that the claim is preempted by ERISA. Cases such as Kulinski and Gilmore state that a benefit plan by itself does not always qualify as ERISA plan. Hence, any discovery concerning whether the Severance Pay Program Qualifies as an ERISA plan is relevant, as that issue may prove dispositive of Count One.

Order at pp.12-13 [Docket No. 24].

Magistrate Judge Nelson also allowed discovery pertaining to whether a conflict of interest existed relating to plaintiffs' ERISA claim, given that defendants both funded and administered the Severance Pay Program. The parties were ordered to meet and confer to determine which of the discovery requests made by plaintiffs were relevant given the court's Order. During the meeting, defendants refused to agree to produce discovery that was not related to whether the Severance Pay Program was an ERISA plan or to the possible conflict of interest issue. Nevertheless, while preserving its objections, defendants responded to nearly all of plaintiffs' discovery. However, in light of defendants' refusal to respond to all of their discovery, plaintiffs sought clarification from Magistrate Judge Nelson regarding the scope of her Order. Magistrate Judge Nelson stated that she would reserve her decision on the proper scope of discovery until defendants' motion to dismiss plaintiffs' contract claims, on preemption grounds, had been decided.

On March 4, 2003, defendants moved to dismiss Count One and moved for partial summary judgment on Counts Two and Three on April 3, 2003. On May 28, 2003, District Judge Paul Magnuson granted defendants' motions in their entirety. With respect to Count One, he dismissed plaintiffs' state breach of contract claims on the grounds of preemption under ERISA, stating:

> ERISA's civil enforcement provisions, codified at 29 U.S.C. § 1132(a), are the exclusive vehicle for actions by ERISA-plan participants and beneficiaries seeking to recover benefits due under the plan, to clarify rights to receive future benefits under the plan, to obtain relief from breach of fiduciary responsibility and to assert improper processing of a claim for benefits. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52-56 (1987), quoted in Fink v.

> Dakotacare, 324 F.3d 685, 688-89 (8th Cir. 2003). Plaintiffs do not dispute that they seek to recover benefits in both Counts One and Three. Instead, in their opposition motion, plaintiffs argue that more discovery is needed to determine whether the Severance Program is an ERISA Plan. However, as Defendants point out, Plaintiffs have unequivocally plead that the Severance Program is an ERISA plan. In their Complaint, Plaintiffs state that the Severance Program 'at all relevant times, has been and is now a 'welfare benefit plan' under 29 U.S.C. § 1002(1) and an 'employee benefit plan' under 29 U.S.C. § 1003(3).' (Compl. ¶ 4.) Therefore, the Severance Program is an ERISA Plan, and the Court grants Defendants' Motion to dismiss the state-law contract claim asserted in Count One.

See May 28, 2003 Order [Docket No. 49].

In their appeal of the District Court's Order to the Eighth Circuit Court of Appeals, plaintiffs argued that the District Court failed to discern their alternative pleadings concerning whether the terms of the severance program became a term and condition of their employment with U.S. Bancorp, and therefore, were subject to the state law breach of contract set forth in Count One of their Complaint, or constituted an ERISA plan subject to Count Three of their Complaint. See Brief of Appellants, 2003 WL 22994830 at *29-30. According to plaintiffs, the record, without more discovery, did not permit the District Court to conclude that that the characteristics of the severance program were entirely consistent with ERISA plans, thereby precluding preemption. Id. at *30. The Eighth Circuit rejected this argument finding that the severance program was part of the U.S. Bancorp Comprehensive Welfare benefit plan and was unquestionably an employee welfare benefit plan covered by ERISA. See Johnson v. U.S. Bancorp, 387 F.3d 939, 942 (8th Cir. 2004). In addition, the Eighth Circuit noted that plaintiffs admitted in their Complaint that the severance program was a "welfare benefit plan" and an "employee benefit plan" under the statutory provisions of ERISA. Id. In sum, the Eighth

Circuit held that the district court properly dismissed the state breach of employment contract claim on the pleadings. Id.

As an alternative breach of contract theory, plaintiffs also argued to the Eighth Circuit that the District Court erred by finding that Count One was preempted under ERISA by failing to consider whether U.S. Bancorp's alleged promises to plaintiffs – that if they continued their employment through Firstar's acquisition of U.S. Bancorp and Firstar offered them a commissions-only compensation plan – constituted a freestanding contract providing severance benefits contingent on some future event. See Brief of Appellants, 2003 WL 22994830 at *25-26 (citing Eide v. Gray Fox Technical Services Corp., 329 F.3d 600, 607 (8th Cir. 2003);[1] Crews v. General American Life Ins. Co., 274 F.3d 502 (8th Cir. 2001)). The Eighth Circuit, in rejecting plaintiffs' argument, found:

> As an alternative breach of contract theory, Johnson and Ormston argue that (i) U.S. Bancorp breached a promise to pay severance benefits if they continued to work after the merger and if Firstar changed their compensation to a commissions-only plan, and (ii) this created a free-standing contract unrelated to the CIC Program and therefore not preempted by ERISA. For support, they cite our recent decision in Eide v. Grey Fox Technical Services Corp., 329 F.3d 600, 607 (8th Cir. 2003). The contention is fatally flawed. Unlike the employees in Eide, Johnson and Ormston remained eligible for CIC Program benefits after the merger. The alleged promise was that benefits would be paid in accordance with the CIC Program if their guaranteed base compensation was eliminated after the partial change in control. This promise, even if it constituted the offer of a unilateral contract under state law, clearly related to the ERISA plan. An employer's promise that ERISA plan benefits will be paid if a future contingency occurs does not create a "free-standing contract" within the meaning of Eide.

[1] The Eighth Circuit had decided Eide less than a week before judgment was entered in this suit.

Johnson, 387 F.3d at 942.

## II. DISCUSSION

Pursuant to 29 U.S.C. § 1132(g), defendants have brought motion for payment in the amount of $34,747.91 for the attorney's fees and costs defendants incurred in connection with their defense of plaintiffs' state law breach of contract claim. In particular, defendants argued that an award of attorney's fees is appropriate where plaintiffs' state contract claim was not substantially justified and was made simply to harass defendants. According to defendants, the purpose of the contract claim was to to allow plaintiffs to conduct discovery not otherwise permitted under ERISA. Further, defendants argued that plaintiffs were not justified in claiming that there was a question of fact as to whether the plan at issue was an ERISA plan, given the admission in plaintiffs' Complaint that it was an ERISA plan. In addition, defendants contended that plaintiffs' alternative argument that statements by U.S. Bancorp regarding entitlement to benefits under the plan raised a valid state claim, was without any basis in the law. Id.

Plaintiffs in turn, dispute the assertion that their preempted state breach of contract claims were not substantially justified or were brought in bad faith.

### A. Standard of Review

ERISA provides that "[i]n any action under [ERISA] . . . by a participant . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g) (emphasis added). There is no presumption that a prevailing party is entitled to attorney's fees. See Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966,

971-72 (8th Cir. 2002). Instead, the decision to award attorney's fees in an ERISA action is within the court's discretion. See White v. Martin, 290 F.Supp.2d 986, 990 (D. Minn. 2003) (citing Hogan v. Raytheon Co., 302 F.3d 854, 857 (8th Cir. 2002)). In deciding whether to award attorney's feeds in an ERISA action, the court should consider:

> (1) the opposing party's bad faith, (2) the opposing party's ability to pay attorney fees, (3) the deterrent effect of an award of fees, (4) whether the party seeking fees acted in the interest of all plan beneficiaries, and (5) the relative merits of the parties' positions.

Eisenrich v. Minneapolis Retail Meat Cutters and Food Handlers Pen. Fund, 282 F. Supp.2d 1077, 1084 (D. Minn. 2003) (citing Lawrence v. Westerhaus, 749 F.2d 494, 495-96 (8th Cir.1984)); see also White, 290 F. Supp.2d at 990 (same) (citations omitted). These factors are to be used as general guidelines, and are "by no means exclusive or to be mechanically applied." Martin, 299 F.3d at 972.

**B. Analysis**

As a preliminary matter, plaintiffs argued that Count One of their Complaint was a breach of employment contract claim under state law and not an action under ERISA, thereby precluding this Court from awarding attorney's fees under 29 U.S.C. § 1132(g). See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Attorneys' Fees at pp. 19-20. This Court finds no merit in plaintiffs' contention. Both the District Court and the Eighth Circuit rejected this argument, and concluded that plaintiffs' breach of contract claim was a claim falling under ERISA and therefore preempted. "When state law claims relate to ERISA plans, those claims are transmuted into ERISA claims." Fort v. St. Paul Fire and Marine Ins. Co., No. Civ. 01-2344 (ADM/AJB), 2002 WL 1127657 at *3 (D. Minn. May 28, 2002) (citing Minnesota

Chapter of Associated Builders and Contractors, Inc., v. Minnesota Dept. of Public Safety, 267 F.3d 807, 811 (8th Cir. 2001)). Further, when a party's state claim fails by virtue of ERISA preemption, the court has discretion to award attorney's fees. See Metropolitan Life Ins. Co. v. Palmer, 238 F. Supp.2d 831, 835-36 (E.D. Tex. 2002) (citation omitted) (granting attorney's fees under 29 U.S.C. § 1132(g) to the insurance company when the insured's contract and negligence claims were preempted under ERISA).

Nevertheless, even though the District Court and Court of Appeals rejected plaintiffs' breach of contract claim, this Court does not find that these claims were brought in bad faith or to harass the defendants, particularly in light of the Eighth Circuit decisions in Crews and Eide.

In Crews, the Eighth Circuit held that if a contract claim is based on a promise which is premised on an employment benefit plan, then it is preempted under ERISA. 329 F.3d at 505. In that case, the plaintiff was promised a "stay on bonus" if she remained with the company through a fixed date. Id. The Eighth Circuit found that the "stay on bonus" was not premised on the ERISA severance pay plan, as claimed by the defendant employer, as there were significant differences between the "stay on bonus" and the severance pay plan, and that there was no evidence linking them together. Id.

In Eide, the plaintiffs' work unit was being purchased from Ceridian by Grey Fox. 329 F.3d at 603. Ceridian guaranteed that if plaintiffs accepted employment with Grey Fox, and were then terminated by them, Ceridian would pay them severance equal to that they which they would have received under the Ceridian severance plan. Id. Plaintiffs were also told that if they declined employment with Grey Fox, they would not be entitled to Ceridian severance benefits, as they would have been deemed to have voluntarily terminated employment with

Ceridian. Id. The plaintiffs were subsequently terminated by Grey Fox, but both Ceridian and Grey Fox refused to pay them the promised severance benefits. Id. The Eighth Circuit found that when Grey Fox terminated plaintiffs, they were no longer eligible for benefits under the Ceridian ERISA plan. Id. at 607. For this reason, the court concluded that Ceridian's promise to pay severance benefits upon termination by Grey Fox equal to what they would have received under Ceridian's severance plan, constituted a free standing plan for which plaintiffs could assert a separate claim not governed by ERISA. Id. (citations omitted).

In this case, the District Court was presented with the alleged promises from Firstar that if plaintiffs continued their employment through Firstar's acquisition of U.S. Bancorp and Firstar offered a commissions-only compensation plan, plaintiffs would be given the right to elect the new compensation plan or receive severance benefits from U.S. Bancorp. Plaintiffs were then presented with the 2001 Compensation Plan, which was a commissions-only compensation plan. Shortly after receipt of that plan, plaintiffs were given an amendment to the plan's compensation schedule addendum which gave them a guaranteed draw equal to their previous base salary until March 2003, but this amendment did not state that it was modifying the terms and conditions of the 2001 Compensation Plan. Plaintiffs were then told to sign the 2001 Compensation Plan. Believing that if they signed the plan, they would be denied the promised severance benefits under the Severance Pay Program, plaintiffs elected to terminate their employment with U.S. Bancorp for "good reason" and to seek severance benefits.

While the Eighth Circuit rejected plaintiffs' arguments based on Crews and Eide, and expressly concluded that the facts in this case were distinguishable from Eide, this Court will

not impute bad faith to plaintiffs because their counsel ultimately analyzed incorrectly the application of either Crews and Eide to the facts of this case, particularly where the Eighth Circuit found in both cases that ERISA did not preempt the breach of contract claims. Further, there is no evidence that plaintiffs were in charge with the legal analysis in this case or that they directed their counsel to make these arguments. Thus, there is no evidence that plaintiffs themselves acted in bad faith in bringing their state breach of contract claim. Non-attorney plaintiffs should be able to rely on their counsel for legal advice without fear that the action of their counsel could force them to pay attorney's fees to the opposing party.[2] Additionally, this Court finds that an imposition of attorney's fees in this case would serve to improperly discourage counsel from making arguments against ERISA preemption for the fear of the imposition of attorney's fees against their clients, if a reviewing court does not accept the legal analysis.

In summary, this Court finds that an award of attorney's fees in favor of defendants in this case is not appropriate. As such, defendants' motion should be denied.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

Defendants' Motion for Attorney Fees [Docket No. 52] be **DENIED**.

Dated: June 13, 2005

---

[2] This finding is supported by the elements a court is to consider in deciding whether to award attorney's fees in an ERISA case, in that the bad faith of the party is factor separate from the relative merits of a party's claims. See generally, Eisenrich, 282 F. Supp.2d at 1084 (citation omitted); White, 290 F. Supp.2d at 990 (citation omitted).

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **June 30, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **June 30, 2005**.